PARAMONT LAND COMPANY,
INC., Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 82–0377–B.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

Feb. 23, 1983.

Terry E. Forcht, Corbin, Ky., Don R. Pippin, Norton, Va., for plaintiff.

Gregory Hrebiniak, Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This is an action brought by a Subchapter S corporation (hereinafter "Sub-S") seeking a refund, with interest, of a $699,848.69 payment of income tax for the year 1974 assessed by the Commissioner of the Internal Revenue Service at the corporate level although the shareholders of the corporation had reported and paid taxes upon the earnings of the corporation on their individual tax returns. Jurisdiction is conferred upon this court under the provisions of 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422.

## FACTS

The following facts were stipulated by both parties at trial:

1. The plaintiff, Paramont Land Company, Inc., is a corporation organized and existing under the laws of the State of Virginia, with its principal place of business located at Wise, Wise County, Virginia, within the Big Stone Gap Division of the United States District Court for the Western District of Virginia.

2. The defendant is the United States of America.

3. This is a suit arising under the Internal Revenue Laws of the United States for refund of taxes assessed against and collected from the plaintiff.

4. Jurisdiction is conferred upon this court under the provisions of 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422.

5. On or about June 14, 1975, the plaintiff timely filed with the Internal Revenue Service Center at Memphis, Tennessee, a Small Business Corporation Federal Income Tax Return (1120S) for the 1974 calendar year. Such return disclosed that no tax was due from said corporation. On or about May 11, 1978, the plaintiff executed and filed with the District Director of the Internal Revenue Service a Waiver of Restrictions on Assessment and Collection of Tax Deficiencies (Internal Revenue Service Form No. 870), and on July 5, 1978, after having received notice and demand from the District Director for payment of an assessment of deficiencies in income tax payments for the calendar year 1974, plaintiff paid to the Internal Revenue Service through its District Director the sum of $861,652.74, representing the total amount of the alleged deficiencies, in the sum of $699,848.69 and interest thereon, in the sum of $161,804.05.

6. The deficiency assessment was based on the determination by the District Director that the plaintiff was subject to Capital Gains Tax imposed by 26 U.S.C. § 1378, resulting from income received during 1974 principally from coal royalties.

7. On or about November 18, 1979, the plaintiff filed with the District Director of the Internal Revenue Service a claim for refund on Internal Revenue Service Form No. 843 seeking the amount of $861,652.74, or such amount as is legally refundable, plus interest, representing the amount of 1974 income tax and interest paid by the plaintiff as a result of the imposition of Section 1378, Capital Gains, against the plaintiff corporation. In June of 1980, the plaintiff filed with the District Director of the Internal Revenue Service its amended return for the calendar year 1974 on Amended Form 1120S, which amended return revealed an overpayment made by the plaintiff for the calendar year 1974 of $861,652.74.

8. On or about October 1, 1980, the plaintiff was mailed a formal notice of disallowance of the claim for refund by the District Director.

9. Plaintiff was incorporated on June 22, 1973.

10. Plaintiff's principal source of income is from coal royalties.

11. Plaintiff acquired its principal coal interests, with respect to which its coal royalties were earned, from Wise Development Company, Inc., by deed dated June 22, 1973. All of plaintiff's other coal interests were acquired after June 22, 1973.

12. For taxable year ending December 31, 1973, plaintiff filed a U.S. Corporation Income Tax Return, Form 1120.

13. For taxable years 1974, 1975, and 1976, plaintiff filed, as an electing small business corporation, U.S. Small Business Corporation Income Tax Returns, Forms 1120S. A copy of plaintiff's return for 1974, the year herein in issue, was attached to the Complaint as joint Exhibit 1.

14. During taxable year 1974, plaintiff realized a gain pursuant to Section 1231 of the Internal Revenue Code in the amount of $2,307,638.00.

## ISSUE

The issue in this case is whether the plaintiff Sub-S corporation is required, under 26 U.S.C. § 1378, to pay tax on gains realized from the sale of coal royalties.

## LAW

### A. CAPITAL GAINS TAX IMPOSED ON SUBCHAPTER S CORPORATIONS

A Sub-S corporation is a special creature of the tax code which is exempt from all federal income taxes—normal tax, surtax, capital gains tax, tax on unreasonably accumulated earnings, and tax on undistributed personal holding company income. 26 U.S.C. § 1372(b) (1982). However, tax may be imposed on a Sub-S corporation on certain capital gains as provided by 26 U.S.C. § 1378 (1982). Section 1378 states:

(a) If for a taxable year of an electing small business corporation—(1) the net capital gain of such corporation exceeds $25,000 and exceeds 50 percent of its taxable income for such year, and (2) the taxable income of such corporation for such year exceeds $25,000, there is hereby imposed a tax (computed under subsection (b) on the income of such corporation. . . . (c)(1) Subsection (a) shall not apply to an electing small business corporation for any taxable year if the election under section 1372(a) which is in effect with respect to such corporation for such taxable year has been in effect for the 3 immediate preceding taxable years. (2) Subsection (a) shall not apply to an electing small business corporation if (A) it has been in existence for less than 4 taxable years, and (B) an election has been in effect for each of its taxable years.

By applying the provisions of Section 1378 together with 26 U.S.C. § 361 and 26 U.S.C. § 1231, it becomes clear that the plaintiff is not entitled to a refund of the taxes paid for the tax year 1974.

Initially, it must be noted that Section 1378(a) applies only to net capital gain income. The plaintiff argues that the income it received from the sale of coal royalties is not net capital gain income as defined by 26 U.S.C. § 1221 (1976). Section 1221 provides

the *general* rules for determining capital gains and losses.

> For the purposes of this subtitle, the term 'capital asset' means property held by the taxpayer (whether or not connected with his trade or business), but does not include ... property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 167, or real property used in his trade or business. . . .

Income from the sale or exchange of certain natural resources is afforded special treatment by the tax code. 26 U.S.C. § 631 (1982 Supp.). Section 631(c) provides, in pertinent part:

> In the case of the disposal of coal (including lignite), or iron ore mined in the United States, held for more than 1 year (6 months prior to the 1976 amendment) before such disposal, by the owner thereof under any form of contract by virtue of which such owner retains an economic interest in such coal or iron ore, the difference between the amount realized from the disposal of such coal or iron ore and the adjusted depletion basis thereof plus the deductions disallowed for the taxable year under section 272 shall be considered as though it were a gain or loss, as the case may be, on the sale of such coal or iron ore.

The meaning of this statute is clarified in Treas.Reg. § 1.631–3

> The provisions of section 631(c) apply to an owner who disposes of coal (including lignite), or iron ore mined in the United States, held for more than [1 year (6 months for taxable years beginning before 1977; 9 months for taxable years beginning in 1977)] before such disposal under any form or type of contract whereby he retains an economic interest in such coal or iron ore. The difference between the amount realized from disposal of the coal or iron ore in any taxable year, and the adjusted depletion basis thereof plus the deductions disallowed for the taxable year under section 272, shall be *gain or loss upon the sale of the coal or iron ore.* See paragraph (b)(4) of this section for the definition of 'owner.' See paragraph (e) of this section for special rules relating to iron ore.

> *In the case of such a disposal, the provisions of section 1231 apply, and the coal or iron ore shall be considered to be property used in the trade or business for the taxable year in which it is considered to have been sold, along with other property of the taxpayer used in the trade or business as defined in section 1231(b),* regardless of whether the coal or iron ore is property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. Whether gain or loss resulting from the disposition of the coal or iron ore which is considered to have been sold will be deemed to be gain or loss resulting from a sale of a capital asset held for more than [1 year (6 months for taxable years beginning before 1977; 9 months for taxable years beginning in 1977)] will depend on the application of section 1231 to the taxpayer for the taxable year; *i.e. if the gains do not exceed the losses,* they shall not be considered as gains and losses from sales or exchanges of capital assets but shall be treated as ordinary gains and losses. (emphasis added)

Under 26 U.S.C. § 1231 (1982) which is referred to in the regulation, gain from the sale or exchange of certain property used in trade or business, including coal and iron ore to which Section 631 applies, is treated as gain from a capital asset and loss from the sale or exchange of such property is treated as an ordinary loss. Capital gain tax is a lower percentage tax than is tax on ordinary income. Ordinary loss is preferable to a capital loss because capital losses can only be used to offset capital gain. Thus, Section 1231 property is afforded the optional tax treatment in that it receives the best of both worlds.

When Section 1378 is read together with Section 631 and Section 1231, it becomes clear that gains from the sale or exchange of coal royalties is a capital gain within the meaning of Section 1378(a). The plaintiff does not contest that he had a gain (be it

ordinary or capital) exceeding $25,000 or that its taxable income for 1974 exceeded $25,000. Additionally as the stipulated facts reveal, the plaintiff does not come under the Section 1378(c)(2) exception. Although in 1974, the plaintiff had been in existence for less than four years, it had not been a Sub-S corporation for each of those years as it filed its 1973 tax return as a "regular" corporation.

## B. CONGRESSIONAL INTENT

The plaintiff contends that the legislative history [1] of the section reveals that Section 1378 was intended to apply only to those corporations that elect Sub-S only for a given year when a large capital gain is realized in order to "pass through" the gain to its shareholders without the imposition of tax at the corporate level. Plaintiff insists that it did not elect to become a Sub-S corporation for a "one shot pass through" and that it intends to remain a Sub-S corporation indefinitely; therefore, Section 1378 should not apply. The court finds that the plaintiff interprets the legislative history

incorrectly. Congress did intend to prevent the abuse of a Sub-S election which the plaintiff describes. However, Congress intended Section 1378 to apply to all Sub-S corporations, regardless of the reason the Sub-S election was made.

The United States Tax Court recently ruled on a similar argument in *Warrensburg Board & Paper Corp. v. Commissioner of Internal Revenue*, 77 T.C. 1107 (1981). In *Warrensburg*, the petitioner filed a valid Sub-S election in its taxable year immediately preceding the taxable year in which it realized a long-term capital gain by reason of an involuntary conversion resulting from a fire. On its return for the year in which the gain was realized, the petitioner's Sub-S election had not been in effect for at least three years preceding the year in which the capital gain was realized. The petitioner's net capital gain exceeded $25,000 and 50 percent of its taxable income for the tax year in issue, and the petitioner's taxable income exceeded $25,000 for that year.

The petitioner argued that Congress only intended Section 1378 to apply to corpora-

---

1. The legislative history states:

It has come to your committee's attention that the 'passthrough' election has on occasion been used by corporations as a device for the avoidance of capital gains tax: A corporation in such a case arranges to have a large amount of capital gains realized in 1 year, elects the 'passthrough' treatment for that year, distributes these realized capital gains, and then deliberately causes its 'passthrough' status to be terminated. This avoids a capital gains tax at the corporate level and substitutes capital gains tax for an ordinary (dividend) income tax at the shareholder level. Normally, this could be done where a corporation sold its assets and completely liquidated within a 12-month period (under the provisions of sec. 337). However, by using the 'passthrough' treatment the shareholders can obtain the same results without liquidating the business.

Such use of the 'passthrough' treatment is contrary to the intent of Congress when it enacted this provision. It was basically intended for an operating business which for business reasons desired the corporate structure yet preferred tax treatment similar to that accorded a partnership. It was intended for an organization desiring this tax treatment at least for a number of years and certainly not for a single year as a device to avoid capital gains tax to the corporation.

This bill provides for the problem described above by adding a new provision (sec. 1378) to the tax laws imposing a tax upon the capital gains of a corporation which has elected the 'passthrough' treatment under certain limited conditions. This tax is imposed only when the electing corporation has an excess of net long-term capital gain over any net short-term capital loss which exceeds its other taxable income and also exceeds $25,000.00. In addition, where the corporation would have a loss for the year but for the excess of capital gain referred to above, the tax will apply only if the taxable income (taking into account this capital gain) is over $25,000.00.

Since this provision is intended to apply only in those situations where the 'passthrough' treatment was elected to avoid taxes on capital gains, the tax is not to be applied in the case of corporations which have been under a 'passthrough' election for at least the 3 immediately prior years. Alternatively, the tax will not apply in the case of new corporations which have been in existence for less than the 3 prior years but have made the 'passthrough' election for the entire period of their existence.

U.S.Code Congressional and Administrative News, 89th Congress, Senate Report. No. 1007, 2141, 2146, 2147 (1966).

tions who intended to elect Sub-S for a short period of time in order to avoid tax on a large capital gain in a given year. The petitioner reasoned that the Section 1378 tax was inapplicable because it intended to remain a Sub-S corporation indefinitely and since the capital gain was the result of an involuntary conversion.

The Tax Court, unpersuaded by this argument, stated:

> In response, respondent states that the language of the statute is clear: the tax is to be imposed (assuming the two conditions described in section 1378(a) are present) unless the electing corporation falls within one of the two exceptions contained in section 1378(c). Respondent maintains that where the statute is clear and unambiguous on its face there is no need to resort to the relevant legislative history since the duty of statutory construction and interpretation does not arise.
>
> Although we sympathize with the petitioner, we must concur with the respondent's analysis. It is true that the instant provision was enacted in order to prevent manipulative subchapter S elections and that the involuntary nature of this forced 'sale' virtually negates any suggestion that the election was manipulative. Nevertheless, we can find no ambiguity in or need for interpreting the statute before us. Petitioner's situation falls squarely within section 1378(a) and neither of the section 1378(c) exceptions has been met.... We are unwilling to add the judicial gloss on the application of section 1378 which petitioner requests.

*Id.* at 1110–11.

This court likewise finds that in the instant case the plaintiff's situation falls within Section 1378(a) and that neither of the Section 1378(c) exceptions has been met. The court is sympathetically cognitive of the plaintiff's predicament. The plaintiff's income would not have been subject to the Section 1378(a) tax on capital gains had it elected to become a Sub-S corporation at the inception of the company. However, Section 1372(e)(5) provides that coal royal-

ties are treated as passive income for the first six months of operations, but, thereafter, they are treated as long-term capital gains under Section 1231. Passive income disqualifies a Sub-S election for five years under the version of Section 1372(e)(5) which was in force at the time the plaintiff first chose a corporate form for its business. The plaintiff was unfortunately caught in a "catch-22" situation for which this court can offer no relief.

Accordingly, for the reasons stated above, this court denies the plaintiff's request for a refund and enters judgment in favor of the defendant.